IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **CINCINNATI INSURANCE COMPANY,**<br><br>     **Plaintiff,**<br><br>    v.<br><br>**JANICE BENDER, a/k/a MISSIE BENDER, PARK AVENUE ACQUISITIONS CO. d/b/a OLSKY JEWELERS, and HOWARD BERNSTEIN,**<br><br>     **Defendants.** | Case No. 13 C 8872<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

Defendant, Janice Bender ("Bender"), took a set of diamond earrings to Defendant Olsky Jewelers for repair. Olsky Jewelers is owned by Defendant, Howard Bernstein (hereinafter collectively referred to as "Olsky"). According to Bender the earrings disappeared and when she tried to find out what happened to them, she was given the run-around. On August 2, 2011, Bender filed a lawsuit in the Circuit Court of Cook County seeking to recover the value of her lost earrings. The case proceeded to arbitration where Bender was successful in obtaining a judgment for the appraised value of the earrings. However Olsky, as permitted under Illinois law, rejected the award and the case proceeded to trial which resulted in Olsky obtaining a directed verdict in its favor on March 9, 2012. Deeply dissatisfied with this outcome, Bender

posted a statement on *Yelp.com,* on April 30, 2012. Yelp is a website whose purpose is "to connect people with great local businesses," through the posting of a review of the particular local business. To put it mildly, Bender's post was not a rave. Her "review" was as follows:

> Beware! Olsky Jewelers lost my diamond earrings and won't make good on them! I took my earrings in for repair and when I went back to pick them up they couldn't find them. They don't give you a claim check and even though the saleswoman admitted that I left them with her, the owner, Howard Bernstein lied and said I didn't. To make matters worse I found out that they have cheap insurance coverage that doesn't cover jewelry you leave for repair if it gets lost! If you ever want to see your jewelry again don't take it to Olsky Jewelers!

As a result of this review, on October 17, 2012, Olsky filed a verified Complaint against Bender, asserting three causes of action: (1) defamation, (2) commercial disparagement, and (3) for a preliminary injunction. Olsky filed an Amended Verified Complaint on August 20, 2013, which dropped the claim for a preliminary injunction, but reasserted the claims for defamation and commercial disparagement. The prayer of the Amended Complaint seeks actual and punitive damages. The Complaint is pending in the Circuit of Cook County, Illinois.

Cincinnati Insurance Company ("Cincinnati") has issued two policies of liability insurance to Bender which were in effect at relevant times. One is a Homeowner's Policy and the other is Personal Umbrella Liability Policy. The latter provides excess coverage to the limits of the underlying Homeowners Policy. The

policies provide virtually identical coverage relevant to this case. The policies both provide coverage for "personal injury" which is defined to include "injury arising out of . . . [d]efamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services." Both policies also contained exclusions for "property damage which may reasonably be expected to result from the intentional . . . acts of [the] insured," and for personal injury arising out of: "[o]ral or written publication of material, if done by or at the direction of an 'insured' with knowledge of its falsity. . . ."

Cincinnati is defending Bender under a reservation of rights and is currently paying for independent counsel chosen by Bender due to a conflict of interest between it and Bender. It is to the advantage of Cincinnati if it is proven that Bender's conduct fits within one of the policy exclusions, while it is to Bender's advantage if it does not fit within the exclusions. To satisfy its obligations to defend its insured under its policy, an insurer has the option of paying defense costs as Cincinnati is currently doing or file a declaratory judgment suit. *Murphy v. Urso,* 430 N.E.2d 1079, 1083 (Ill. 1981). Cincinnati, currently taking the former route, now seeks to end its obligation to pay Bender's defense cost, by pursuing the declaratory route.

## II.  DISCUSSION

Cincinnati bases its claim for non-coverage on Olsky's verified allegations in its suit against Bender for defamation and commercial disparagement, on two allegations, specifically that "the defamatory statements were made by [Bender] with the malicious and specific intent of damaging the plaintiffs," and that "the statements made by the defendant were and are false, the defendant knew they were false, and they were made with the malicious intent to demean and disparage the quality of the plaintiffs' goods and services."

Bender contends that Cincinnati's argument ignores the Illinois law of defamation and commercial disparagement and has moved the Court to dismiss or stay this litigation until the underlying lawsuit brought by Olsky is resolved.  Specifically, it contends that under Illinois law a plaintiff, pursuing a defamation and/or commercial disparagement claim need only prove negligence or recklessness and need not prove malice, citing *Cincinnati Insurance Co. v. American Hardware Manufactures Association,* 898 N.E.2d 216, 237. (Ill App. 1Dist. 2008).  Thus, when and if the case is tried, Olsky can and probably will tender an issues instruction that merely requires proof of negligence, and separately submit a malice instruction with its claim for punitive damages.  Cincinnati responds that the Olsky Complaint, including the malice

allegations, is under oath and thus constitutes a judicial admission and must prove malice in order to recover.

Cincinnati is wrong on the last statement. A judicial admission is a clear, unequivocal statement by a party about a concrete fact within that party's knowledge. *Elliott v. Industrial Commission of Illinois,* 707 N.E.2d 228, 230 (1st Dist. 1999). Certainly an opinions as to someone else's state of mind would not be such a concrete fact. Moreover the statement was not made by Olsky in this case where it is merely a technical defendant and it would be hard to make the case that Bender would seek to bind Olsky to that opinion in the underlying case.

For Olsky, a non-public figure, to recover from Bender for defamation or commercial disparagement, it need only prove that Bender behaved negligently or even recklessly but not necessarily with malice. This is certainly within the realm of possibility that a jury could believe that Bender mistakenly thought that Olsky had lost her earrings and refused to make amends. Thus, she could have acted without malice. Illinois law is clear that to obtain punitive damages a plaintiff, in addition to proof of tortious conduct, must prove that the defendant committed the tort "with fraud, actual malice, delegate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.,* 384 N.E.2d 353 (Ill. 1978). Illinois law is clear

that if a complaint alleges several theories or avenues of recover, only one of which is potentially within the coverage of the policy, an insurance company must provide a defense. *General Agents Insurance Company of America v. Midwest Sporting Goods Company,* 828 N.E.2d 1092, 1098 (Ill. 2005). Since a liberal reading of the Olsky lawsuit, which Illinois law requires, *General Agents Ins. Co. Of America, Inc. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1098 (Ill. 2005), shows a claim for ordinary defamation and commercial disparagement, as well as a claim for punitive damages, the Complaint sufficiently states a claim within the policy language to require Cincinnati to continue to provide a defense to Bender. The issue of indemnification will, of course, await the results of the trial. A decision at this time would be premature.

### III. CONCLUSION

For the reasons stated herein, the Court stays this case until the proceeding (Case No. 2012 L 9551) in the Circuit Court of Cook County, Illinois is concluded.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: 7/2/2014